******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOHN M. ROBB *v.* CONNECTICUT BOARD OF VETERINARY MEDICINE ET AL.
## (AC 41912)

Lavine, Prescott and Moll, Js.*

*Syllabus*

The plaintiff appealed to the trial court from the decision of the defendant state board of veterinary medicine disciplining him on a finding that he was negligent pursuant to statute (§ 20-202 (2)). The plaintiff had been administering less than the prescribed dose of rabies vaccine to dogs under a certain weight in contravention of the applicable statute (§ 22-359b) and regulation (§ 22-359-1). The court dismissed the plaintiff's appeal, concluding that the board had properly construed § 22-359b and § 22-359-1 of the regulations to mandate the administration of the prescribed amount of rabies vaccines to all dogs regardless of weight and properly determined that the plaintiff had committed professional negligence by failing to comply with the statute and the regulation. The court further concluded that the board's decision was supported by substantial record evidence and that the board did not exceed its authority or abuse its discretion in imposing its disciplinary order. On the plaintiff's appeal to this court, *held*:

1. The trial court did not err in concluding that the board properly construed the statute and regulation governing the standard of care for rabies vaccination in Connecticut and properly imposed disciplinary action on the plaintiff on its finding that his vaccination protocol constituted a prima facie violation of the standard of care: § 22-359b and § 22-359-1 of the regulations are plain and unambiguous in requiring that licensed rabies vaccines in Connecticut must be administered as instructed, a plain reading of both does not yield an absurd or unworkable result, and neither the statute nor the regulation conferred discretion on the plaintiff to administer the rabies vaccine in any other manner, which he did not dispute doing; moreover, this court declined to alter the statutory and regulatory scheme governing rabies vaccinations in Connecticut.

2. This court declined to review the plaintiff's claims that the trial court improperly concluded that there was substantial evidence supporting the board's finding that he had failed to receive informed consent from his client and that the board did not exceed its authority or abuse its discretion in imposing its disciplinary order, the plaintiff having failed to brief these claims adequately; the plaintiff's attempt to incorporate by reference his amended verified complaint into his principal appellate brief was not procedurally proper, and the abstract representations contained in the plaintiff's principal appellate brief, unaccompanied by substantive legal analysis or citation to legal authority, failed to satisfy the plaintiff's obligation to adequately brief his claims.

Argued June 29, 2020—officially released May 18, 2021

*Procedural History*

Appeal from the decision by the named defendant disciplining the plaintiff upon a finding of professional negligence, brought to the Superior Court in the judicial district of Danbury and transferred to the judicial district of New Britain, where the court, *Hon. Lois Tanzer*, judge trial referee, rendered judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph P. Secola*, for the appellant (plaintiff).

*Tanya Feliciano DeMattia*, assistant attorney general, with whom, on the brief, were *William Tong*, attor-

ney general, and *Clare Kindall,* solicitor general, for the appellee (named defendant).

*Opinion*

MOLL, J. The plaintiff, John M. Robb, a veterinarian, appeals from the judgment of the Superior Court dismissing his administrative appeal from the decision of the defendant Connecticut Board of Veterinary Medicine (board)[1] disciplining him upon a finding of professional negligence pursuant to General Statutes § 20-202 (2).[2] On appeal, we distill the plaintiff's claims to be that the court incorrectly concluded that (1) the board properly construed General Statutes § 22-359b, as well as § 22-359-1 of the Regulations of Connecticut State Agencies, in finding him to have been professionally negligent under § 20-202 (2), (2) there was substantial evidence supporting the board's finding that he had failed to obtain informed consent from one of his clients with respect to his rabies vaccination protocol, and (3) the board did not exceed its authority or abuse its discretion in imposing its disciplinary order. We affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff is licensed to practice veterinary medicine in Connecticut. On August 1, 2014, the Connecticut Department of Public Health (department) submitted to the board a statement of charges[3] against the plaintiff charging him with professional negligence in violation of § 20-202 (2). The statement of charges alleged in relevant part: "From about July, 2010 through about February, 2012, while working at the [Banfield Pet Hospital in Stamford, the plaintiff] failed to meet the standard of care in one or more of the following ways: a. [the plaintiff] instructed employees to administer [one-half] doses of rabies vaccines to animals under the weight of fifty pounds; b. [the plaintiff] instructed employees to refrigerate unused [one-half] doses of rabies vaccines to be used to vaccinate another pet; c. [the plaintiff] failed to adequately document medication administration; and/or d. [the plaintiff] failed to obtain adequate informed consent from pet owners."

On November 3, 2014, the plaintiff answered the statement of charges and asserted three special defenses. The plaintiff twice amended his answer and special defenses. In his operative responsive pleading, the plaintiff alleged that he had "instructed his employees to give an appropriate dose of rabies vaccine" to his clients' dogs, but he otherwise denied the material allegations set forth in the statement of charges. In addition, the plaintiff asserted six special defenses.[4]

The board held six days of administrative hearings between December 2, 2014, and February 23, 2016. On April 5, 2016, the parties submitted posthearing briefs. The record was closed on April 5, 2016, and the board conducted fact-finding on May 4 and November 2, 2016.

On February 2, 2017, the board issued a corrected

memorandum of decision[5] concluding that the department had proven by a preponderance of the evidence that, between approximately July, 2010, and February, 2012, the plaintiff had committed professional negligence in violation of § 20-202 (2). First, the board found that the plaintiff did not contest the department's allegation that he had instructed his employees to administer one-half doses of rabies vaccines to his clients' dogs weighing under fifty pounds; instead, the plaintiff contended that he had exercised his discretion to adjust the doses based on the weight of the dogs. The board concluded that, pursuant to General Statutes § 22-359b[6] and § 22-359-1 of the Regulations of Connecticut State Agencies,[7] rabies vaccines had to be administered in accordance with "licensed rabies vaccine label directions," which required the administration of one milliliter of rabies vaccine regardless of the weight of the dog, such that the plaintiff's conduct constituted a deviation from the standard of care.[8]

Next, the board determined that the department had proven its allegation that the plaintiff had instructed his employees to refrigerate unused one-half doses of rabies vaccines for later use. The board concluded that the plaintiff did not breach the standard of care by instructing his employees to refrigerate the unused one-half doses for short periods of time; however, the board reiterated its prior determination that the administration of one-half doses of rabies vaccines to dogs weighing under fifty pounds constituted a breach of the standard of care.

Last, the board determined that the department had proven its allegation that the plaintiff had failed to obtain informed consent from his clients with regard to his rabies vaccination protocol. The board stated that, "when a veterinarian deviates from the administration of a statutorily mandated recommended [vaccine] dose, he or she must document and explain to the client that: there is a mandated dose, why the mandated dose was not used, and the risks of not vaccinating the recommended dose." With regard to Anne Bloomdahl, one of the plaintiff's clients, the board determined that "her testimony supported the finding that she did not receive adequate information from [the plaintiff] as to the legality of [the plaintiff's] rabies vaccine protocol. . . . Bloomdahl incorrectly believed that having her dogs vaccinated with only [one-half] doses of rabies vaccine[s] was sufficient under Connecticut law. . . . Thus, [the plaintiff] failed to receive informed consent from Bloomdahl when he administered [one-half] doses of rabies vaccine[s] to her dogs without informing her that he was statutorily required to inject her dog[s] with a full milliliter of the rabies vaccine, the reason the full dose was not used, the fact that [the plaintiff] could have obtained a rabies vaccine exemption [pursuant to General Statutes § 22-339b (b)], and about the risks associated with the failure to vaccinate . . . Bloom-

dahl's dog[s] fully." (Citations omitted.) Additionally, the board found the plaintiff to be "not credible" and "evasive" when questioned about whether he had received informed consent from his clients.[9]

In light of the foregoing determinations, the board concluded that disciplinary action against the plaintiff was warranted pursuant to General Statutes §§ 19a-17[10] and 20-202. In imposing its disciplinary order, the board stated: "The board finds that [the plaintiff's] misconduct of under vaccinating animals for rabies endangered their lives and those around them. The department's expert stated that under vaccination could potentially provide the vaccinated animals with less protection, which 'could result in the animal getting a zoonotic disease that's potentially fatal to people.' . . . In the situation when an animal is suspected of having contracted rabies, the board notes that the animal must be quarantined and may be killed in order to examine whether it did in fact contract rabies. . . . Therefore, due to the serious consequences that could result from under vaccination for rabies, and [the plaintiff's] ardent belief that under his Aesculapian authority[11] he does not have to vaccinate animals in accordance with state laws and regulations . . . the board orders that [the plaintiff's] license to practice veterinary medicine be place[d] on probation for a period of twenty-five . . . years under the terms and conditions listed [later in the corrected memorandum of decision]."[12] (Citations omitted; footnote added.)

On March 28, 2017, pursuant to General Statutes § 4-183 (a),[13] the plaintiff appealed from the decision of the board to the Superior Court. On June 20, 2018, after the parties had filed their respective briefs, the court, *Hon. Lois Tanzer*, judge trial referee, issued a memorandum of decision dismissing the administrative appeal. The court summarized that "[t]he crux of the [administrative] appeal concerns [the plaintiff's] ability to use his personal rabies vaccination protocol of administering a [one-half] dose of rabies vaccine for dogs weighing less than fifty pounds instead of complying with state statutes and regulations for administering rabies vaccines. [The plaintiff] raised numerous issues before the board in his denial to the [statement of] charges and in several special defenses. He reiterates them in this [administrative] appeal. He raises essentially two challenges: (1) the board misinterpreted and misapplied the statutes and regulations governing the administration of rabies vaccines, and (2) the board did not have substantial evidence to support its findings and conclusions, and it acted illegally, arbitrarily and in abuse of its discretion. [The plaintiff] also challenges the [disciplinary] order of the board as erroneous in law and fact." The court rejected the plaintiff's contentions, concluding that (1) the board properly construed § 22-359b, as well as § 22-359-1 of the Regulations of Connecticut State Agencies, to mandate that rabies vaccines

be administered in accordance with their attendant label directions, which required the administration of one milliliter of rabies vaccine to dogs regardless of weight, and properly applied the statute and the regulation to determine that the plaintiff had committed professional negligence in violation of § 20-202 (2) by failing to comply with the statute and the regulation, and (2) there was substantial evidence in the record supporting the board's decision. In addition, the court rejected the plaintiff's first through fifth special defenses[14] and determined that the board did not exceed its authority or abuse its discretion in imposing its disciplinary order. This appeal followed.

I

The plaintiff first claims that the court improperly concluded that the board correctly interpreted and applied § 22-359b, as well as § 22-359-1 of the Regulations of Connecticut State Agencies, in determining that he had committed professional negligence in violation of § 20-202 (2) by deviating from the requirements of the statute and the regulation regarding the administration of rabies vaccines. For the reasons that follow, we disagree.

We begin by setting forth the relevant standard of review and legal principles governing our review of this claim. "[J]udicial review of the [board's] action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference . . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Because this case forces us to examine a question of law, namely, [statutory] construction and interpretation . . . our review is de novo." (Citations omitted; internal

quotation marks omitted.) *Okeke* v. *Commissioner of Public Health*, 304 Conn. 317, 324–25, 39 A.3d 1095 (2012). Additionally, our appellate courts have not had occasion to interpret either the statute or the regulation. Thus, "[w]e are also compelled to conduct a de novo review because the issue of statutory construction before this court has not yet been subjected to judicial scrutiny." (Internal quotation marks omitted.) Id., 325.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302–303, 140 A.3d 950 (2016). "Administrative rules and regulations are given the force and effect of law. . . . We therefore construe agency regulations in accordance with accepted rules of statutory construction." (Internal quotation marks omitted.) *Colonial Investors, LLC* v. *Furbush*, 175 Conn. App. 154, 169, 167 A.3d 987, cert. denied, 327 Conn. 968, 173 A.3d 953 (2017).

Before turning to the statute and the regulation at issue in this appeal, we first observe that animal vaccines are extensively regulated by the federal government. The Virus-Serum-Toxin Act, 21 U.S.C. §§ 151 through 159 (2018), "authorizes the United States Department of Agriculture (USDA) to license and regulate the preparation and sale of viruses, serums, toxins, and analogous products, for use in the treatment of domestic animals. . . . USDA has delegated this authority to its Animal and Plant Health Inspection Service (APHIS). . . . APHIS in turn has promulgated an extensive regulatory scheme governing the design, manufacture, distribution, testing, and labeling of animal vaccines." (Citations omitted; internal quotation marks omitted.) *Symens* v. *SmithKline Beecham Corp.*, 152 F.3d 1050, 1052 (8th Cir. 1998). APHIS "grants licenses

for veterinary biological products which are pure, safe, potent, and efficacious *when used according to label instructions*." (Emphasis added.) Viruses, Serums, Toxins, and Analogous Products; Packaging and Labeling, 59 Fed. Reg. 43,441, 43,442 (August 24, 1994).

In Connecticut, unless exempted from vaccination requirements, "[a]ny owner or keeper of a dog or cat of the age of three months or older shall have such dog or cat vaccinated against rabies."[15] General Statutes § 22-339b (a). Pursuant to § 22-359b, "[a] rabies vaccine used at an antirabies clinic shall be administered in accordance with the recommendations of the United States Department of Agriculture." Additionally, General Statutes § 22-359 (e) provides in relevant part that the Commissioner of Agriculture (commissioner) "shall institute such measures as the commissioner deems necessary to prevent the transmission of rabies associated with animals in public settings," and subsection (f) provides in relevant part that the commissioner "shall adopt regulations . . . to implement the provisions of subsection (e) of this section. Such regulations may include requirements for the vaccination of animals against rabies . . . ." Pursuant to that authority, the commissioner adopted § 22-359-1 of the Regulations of Connecticut State Agencies, which sets forth the following relevant regulatory definitions: "(5) 'Licensed rabies vaccine' means a vaccine against rabies for certain species of animals licensed by the United States Department of Agriculture for use in such species and marketed in the United States. . . . (10) 'Vaccinated' means an animal was vaccinated against rabies *in accordance with licensed rabies vaccine label directions*." (Emphasis added.)

Read together and in light of the federal regulatory scheme governing rabies vaccinations, § 22-359b and § 22-359-1 of the Regulations of Connecticut State Agencies are plain and unambiguous in requiring that licensed rabies vaccines in Connecticut must be administered as instructed by their accompanying label directions. Neither that statute nor that regulation confers discretion on a veterinarian to administer rabies vaccines in a manner other than as directed by the attendant rabies vaccine label directions. The sincerity of his or her belief is immaterial. In the present case, there is no dispute that the licensed rabies vaccine label directions instructed the administration of one milliliter of rabies vaccine to the dogs of the plaintiff's clients regardless of weight.[16]

In reaching its decision, the board stated that "[t]he standard of care requires that [the plaintiff] comply with the statutory and regulatory requirements for rabies vaccination of dogs. In Connecticut, the standard of care for rabies vaccination is governed by" § 22-239b and § 22-359-1 of the Regulations of Connecticut State Agencies. Upon finding that the plaintiff's rabies vacci-

nation protocol "diverged from the rabies vaccine label instructions, which provided for the full vaccine dose of one milliliter to be administered regardless of the weight of the animal" and finding that the plaintiff had failed to obtain a rabies vaccine exemption pursuant to § 22-339b (b); see footnote 8 of this opinion; the board concluded that the plaintiff's weight dependent protocol constituted "a prima facie violation" of the statute and the regulation. Whereupon, the board determined that the plaintiff's conduct violated the standard of care and constituted grounds for disciplinary action pursuant to §§ 19a-17 and 20-202 (2). The trial court agreed with the board's statutory and regulatory interpretation and, inter alia, found that the board's findings were based on sufficient evidence.

Here, the plaintiff raises a number of arguments challenging the "mechanical" application of § 22-359b and § 22-359-1 of the Regulations of Connecticut State Agencies by the board and the court. We construe these arguments as supporting an assertion by the plaintiff that a plain reading of the statute and the regulation yields an absurd or unworkable result. Specifically, the plaintiff contends that construing the statute and the regulation to mandate strict compliance with licensed rabies vaccine label directions (1) creates a conflict with the Veterinarian's Hippocratic Oath[17] because, in his opinion, it is necessary to lower the doses of rabies vaccines provided to smaller dogs to protect their health, (2) removes the right that medical professionals, including veterinarians, have to use pharmaceuticals "off-label,"[18] (3) ignores evidence in the record demonstrating that administering the legally required doses of rabies vaccines to smaller animals increases their risk of injury, (4) ignores the lack of evidence in the record indicating that administering less than the legally required doses of rabies vaccines to his clients' dogs weighing under fifty pounds caused any harm,[19] (5) ignores changes in federal law pursuant to which vaccine manufacturers are immune from liability for injuries caused by vaccinations administered in accordance with label directions whereas veterinarians remain liable therefor, and (6) ignores that the standard of care regarding the administration of rabies vaccines is in a "state of flux." We consider these various contentions, none of which is directed to the language of the statute or the regulation, to be unavailing. While all reflect the plaintiff's policy related beliefs as to why he should not have to comply with current requirements governing the administration of rabies vaccines, none leads us to conclude that a plain reading of the statute and the regulation yields an absurd or unworkable result.

What the plaintiff seeks is a change in the law. Indeed, during the administrative hearing held on November 4, 2015, the plaintiff testified: "What I'm doing is not illegal. It's not illegal, and I will show that. I will show that. I have an authority that is above any law that would

make me purposely hurt an animal. I have that authority, so it's not illegal. *The law is illegal. The law is a law that's not doing what it's supposed to. It's a corrupt law and needs to be changed . . . .*" (Emphasis added.) "[I]t is up to the legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." (Internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988).[20] Simply put, the plaintiff must pursue other avenues if he seeks to change the law, as it is not within this court's province to alter the statutory and regulatory scheme governing rabies vaccinations in Connecticut.

Here, the board and the court correctly construed § 22-359b and § 22-359-1 of the Regulations of Connecticut State Agencies as requiring licensed rabies vaccines to be administered in accordance with their attendant label directions, which instructed the administration of one milliliter of rabies vaccine to dogs regardless of their weight. The plaintiff does not dispute that, during the time period in question, he instructed his employees to administer one half of the legally mandated dose of rabies vaccine to his clients' dogs weighing under fifty pounds. Accordingly, the court did not err in concluding that the board properly construed the statute and the regulation governing the standard of care for rabies vaccination in Connecticut, found that the plaintiff's rabies vaccination protocol constituted a prima facie violation thereof, and imposed disciplinary action on the plaintiff pursuant to §§ 19a-17 and 20-202 (2).

II

The plaintiff next claims that the court improperly determined that (1) the board's finding that he did not receive informed consent from Bloomdahl with regard to his rabies vaccination protocol was supported by substantial evidence, and (2) the board did not exceed its authority or abuse its discretion in imposing its disciplinary order. We decline to review the merits of these claims because the plaintiff has failed to brief them adequately.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016).

At the outset, we note that the plaintiff seeks to incorporate by reference his amended verified complaint filed in the Superior Court on August 25, 2017, which is sixty-six pages long and described by the plaintiff as "the foundational document upon which [his] brief is built," into his principal appellate brief. He states that he has "not repeated factual or legal arguments [in his principal appellate brief] if made adequately in the amended verified complaint." (Emphasis omitted.) The plaintiff's attempt to incorporate by reference his amended verified complaint into his principal appellate brief is not procedurally proper. As is apparent in this case, permitting legal claims to be incorporated by reference into an appellate brief would, among other things, enable litigants to circumvent the page limitations set forth in Practice Book § 67-3.[21] See, e.g., *Papic* v. *Burke*, 113 Conn. App. 198, 217 n.11, 965 A.2d 633 (2009) ("it is not permissible to use [an] appendix [to an appellate brief] either to set forth argument or to evade the thirty-five page limitation provided in Practice Book § 67-3 and already met by the [appellant's] brief"). An appellant abandons any right to review of claims cursorily raised in a principal appellate brief without adequate supporting analysis and legal citations provided therein. See id., 216–17, 217 n.11 (concluding that appellant's claim was inadequately briefed when appellant sought to incorporate by reference supporting arguments contained in appendix into appellate brief, which contained no legal analysis or citation to case law with regard to claim). Thus, we decline to review any legal claims raised in the amended verified complaint that the plaintiff has not independently and adequately briefed in his principal appellate brief.[22]

Turning now to the plaintiff's claim that the court improperly concluded that there was substantial evidence supporting the board's finding that he had failed to receive informed consent from Bloomdahl with regard to his rabies vaccination protocol, the plaintiff asserts only the following in his principal appellate brief: "[The plaintiff's] client . . . Bloomdahl testified that, not only did [the plaintiff] obtain informed consent from her to do a weight-dependent vaccination, she specifically requested it beforehand for her [dogs]. . . . How the board, affirmed by the [trial] court, could find to the contrary is inexplicable." (Citation omitted.) The plaintiff provides no substantive legal analysis or citation to legal authority in his principal appellate brief to support this claim.[23] Thus, we decline to review it.

Similarly, the plaintiff has failed to adequately brief his claim challenging the propriety of the board's disciplinary order. With respect to this claim in his principal appellate brief, the plaintiff (1) recites the court's summary of the board's disciplinary order, (2) states that, despite describing the order as " 'draconian,' " the court did not disturb it, (3) asserts that the order should be

vacated on remand, and (4) represents that, if the order is vacated on remand, then he agrees to refrain from administering rabies vaccines during the pendency of any proceedings before the board or the court on remand. These abstract representations, unaccompanied by substantive legal analysis or citation to legal authority, fail to satisfy the plaintiff's obligation to adequately brief his claim of error. Accordingly, we decline to review it.[24]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In the administrative appeal, the plaintiff named as additional defendants (1) the Connecticut Department of Public Health (department), (2) Mary A. O'Neill, Esq., as the chairperson of the board, and (3) Raul Pino, M.D., as the commissioner of the department. The board is the only defendant that has filed an appellate brief in this appeal.

[2] General Statutes § 20-202 provides in relevant part: "After notice and opportunity for hearing as provided in the regulations established by the Commissioner of Public Health, said board may take any of the actions set forth in section 19a-17 for any of the following causes . . . (2) proof that the holder of such license . . . has become unfit or incompetent or has been guilty of cruelty, unskillfulness or negligence towards animals and birds. In determining whether the holder of such license has acted with negligence, the board may consider standards of care and guidelines published by the American Veterinary Medical Association including, but not limited to, guidelines for the use, distribution and prescribing of prescription drugs . . . ."

We observe that "negligence" as used in § 20-202 (2) is not akin to the common-law tort standard. See *Lawendy* v. *Connecticut Board of Veterinary Medicine*, 109 Conn. App. 113, 119–20, 951 A.2d 13 (2008) (concluding that, unlike common-law negligence, finding of professional negligence under § 20-202 (2) does not require evidence of actual injury to animal). When referring to "negligence" under § 20-202 (2), we use the phrase "professional negligence" to differentiate it from the common-law tort standard.

[3] General Statutes § 20-196b provides: "The Connecticut Board of Veterinary Medicine shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints filed against practitioners licensed under this chapter and (3) impose sanctions where appropriate."

[4] The plaintiff asserted the following special defenses: (1) § 22-359-1 of the Regulations of Connecticut State Agencies was an unconstitutional delegation of power in violation of article first, § 8, article second, § 1, and article third, § 1, of the Connecticut constitution; (2) requiring him to adhere to § 22-359-1 of the regulations was arbitrary or capricious on the basis of changes in federal law; (3) requiring him to adhere to § 22-359-1 of the regulations was arbitrary or capricious because, on the basis of his clinical experience, as well as advancements in medicine, his rabies vaccination protocol, which provided reduced doses of rabies vaccines to smaller pets, was justified; (4) the statement of charges was untimely pursuant to General Statutes § 20-204a and was barred under the doctrine of laches; (5) § 22-359-1 of the regulations was unconstitutionally vague as applied to him; and (6) pursuant to *North Carolina State Board of Dental Examiners* v. *Federal Trade Commission*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35 (2015), the board was violating antitrust laws because three of its five members were veterinarians.

[5] The board issued an original memorandum of decision on February 1, 2017. The following day, the board issued the corrected memorandum of decision, which corrected a typographical error.

[6] General Statutes § 22-359b provides: "A rabies vaccine used at an antirabies clinic shall be administered in accordance with the recommendations of the United States Department of Agriculture."

[7] Section 22-359-1 of the Regulations of Connecticut State Agencies provides in relevant part: "(5) 'Licensed rabies vaccine' means a vaccine against rabies for certain species of animals licensed by the United States Department of Agriculture for use in such species and marketed in the United States. . . .

"10 'Vaccinated' means an animal was vaccinated against rabies in accordance with licensed rabies vaccine label directions."

[8] The board also concluded that, pursuant to General Statutes § 22-339b (b), the plaintiff could have obtained an exemption in order to vary the rabies vaccine doses administered to dogs weighing under fifty pounds, but that there was no evidence in the record that the plaintiff had done so. Because the plaintiff has not challenged that conclusion in his principal appellate brief, we do not address it further.

[9] As to the department's remaining allegation that the plaintiff had failed to adequately document medication administration, the board determined that the department had not sustained its burden of proof.

[10] Pursuant to § 19a-17 (a), "upon finding the existence of good cause," the board is authorized to discipline a licensed veterinarian by, inter alia, placing his or her license to practice veterinary medicine on probation.

[11] During the administrative hearing held on June 15, 2015, the plaintiff testified in relevant part that "Aesculapian authority is the authority that a doctor has between each patient, being a veterinarian, being a human doctor, to make the best decision for that patient. It's an authority given by God because you're dealing with life and death. And if a veterinarian or any doctor doesn't have that authority and is forced to make a decision based on any law or regulation or statute, but he—he or she knows that it will cause injury to the pet in front of him, then he has the authority to overrule that decision. So, that's—that's an authority that only doctors have. Lawyers don't have it. Electricians don't have it. No other professional has it, but we, because we are physicians, who inject things in animals, who prescribe medications, we have the authority, the final say with every patient in front of us with what we do, what we inject, how much, this type of thing. So, the Aesculapian authority is the authority I have to formulate a vaccine protocol based on my clinical experience, my study of the scientific articles. It's a God-given authority."

[12] In addition to placing the plaintiff's license to practice veterinary medicine on probation, the board reprimanded the plaintiff's license. See General Statutes § 19a-17 (a) (4). To be clear, the board did not revoke the plaintiff's license; rather, the primary limitation imposed by the disciplinary order was that the plaintiff was prohibited from administering rabies vaccinations to animals during the probationary period.

[13] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[14] On April 17, 2015, the plaintiff filed with the board a motion to dismiss the statement of charges predicated on his sixth special defense asserting that the composition of the board violated antitrust laws. On May 4, 2015, the board denied the motion to dismiss. On appeal to the Superior Court, the plaintiff did not challenge the board's denial of his motion seeking dismissal on the basis of his sixth special defense. Neither the board's denial of the motion to dismiss nor the plaintiff's sixth special defense is at issue in this appeal.

[15] "'Rabies' " is defined as "an infection of the central nervous system of mammals caused by viruses in the Rhabdovirus family that typically results in death." Regs., Conn. State Agencies § 22-359-1 (8).

[16] The plaintiff contends that § 22-359b and § 22-359-1 of the Regulations of Connecticut State Agencies do not expressly set forth the dose of rabies vaccine required to be administered. The plaintiff, however, does not contest that the licensed rabies vaccine label directions instruct the administration of one milliliter of rabies vaccine. During the administrative hearing held on June 15, 2015, the plaintiff testified that "[w]e all know the package insert says that [the dose is] one milliliter per pet. That's what the vaccine insert says . . . . [The dose is] one milliliter per pet. That's [the] recommendation."

[17] The record contains the following recitation of the Veterinarian's Hippocratic Oath: "Being admitted to the profession of veterinary medicine, I solemnly swear to use my scientific knowledge and skills for the benefit of society through the protection of animal health and welfare, the prevention and relief of animal suffering, the conservation of animal resources, the promotion of public health, and the advancement of medical knowledge. I will practice my profession conscientiously, with dignity, and in keeping with the principles of veterinary medical ethics. I accept as a lifelong obligation the continual improvement of my professional knowledge and competence."

[18] "Off-label" refers to the "[u]se of a licensed drug for an indication not approved by the [United States Food and Drug Administration] or other governmental regulatory body." Stedman's Medical Dictionary (28th Ed. 2006) p. 1359.

[19] To the extent that the plaintiff raises a distinct claim that the board erred in finding that he had committed professional negligence under § 20-202 (2) without evidence of actual harm to his clients' dogs, that claim is unavailing. See *Lawendy* v. *Connecticut Board of Veterinary Medicine*, 109 Conn. App. 113, 119–20, 951 A.2d 13 (2008) (concluding that evidence of actual injury to animal is not required to sustain finding of professional negligence under § 20-202 (2)).

[20] Accepting the plaintiff's argument would open the door to every veterinarian utilizing his or her own personal view as to what dosages are appropriate and undermine the state's goal of enacting a coherent regulatory scheme.

[21] Pursuant to Practice Book § 67-3, when no cross appeal is involved, principal appellate briefs are limited to thirty-five pages and reply briefs are limited to fifteen pages. Section 67-3 further provides that the page limitations may be increased with permission of the chief justice or chief judge.

[22] At this juncture, we further note that the plaintiff states in his principal appellate brief that he is not raising any claims on appeal regarding his first or fifth special defenses. Also, the plaintiff did not pursue any claim regarding his sixth special defense in his administrative appeal and he does not raise any such claim before this court. See footnote 14 of this opinion. The plaintiff's second and third special defenses are encompassed in his arguments addressed in part I of this opinion.

In addition, the plaintiff has not raised any claim in his principal appellate brief with regard to his fourth special defense, although he has not expressly represented that he has abandoned any such claim. To the extent that the plaintiff requests that we review any legal claim regarding his fourth special defense raised in his amended verified complaint, notwithstanding that he has failed to analyze any such claim in his principal appellate brief, we reject that request. See *Papic* v. *Burke*, supra, 113 Conn. App. 216–17, 217 n.11.

[23] In its appellate brief, the board argues that the plaintiff's informed consent claim has not been adequately briefed. The plaintiff expounds on his informed consent claim in his reply brief. The informed consent claim remains unreviewable, however, because the plaintiff cannot use his reply brief to resurrect a claim that he has abandoned by failing to adequately brief it in his principal appellate brief. See *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010) (declining to consider claim when appellant raised "vague assertion" of claim in principal appellate brief and later "amplified her discussion of the issue considerably in her reply brief").

[24] In its memorandum of decision, the court described the board's disciplinary order, which, inter alia, placed the plaintiff's license to practice veterinary medicine on probation for twenty-five years, as "draconian." We do not address the propriety of the disciplinary order, as the plaintiff has abandoned his claim of error regarding it. Nevertheless, as confirmed by the board's counsel during oral argument before this court, we note that the plaintiff is entitled to petition the board to withdraw the probation. See General Statutes § 19a-17 (b) (board "may withdraw the probation if it finds that the circumstances that required action have been remedied").