******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ANSONIA POLICE UNION FOP LOCAL 913 *v.* CITY OF ANSONIA
## (AC 48469)

Alvord, Moll and Keller, Js.

*Syllabus*

The defendant appealed from the trial court's judgment granting the plaintiff's application to vacate an arbitration award after finding that the award violated the public policy embodied in Connecticut's whistleblower statute (§ 31-51m) and the Connecticut Fair Employment Practices Act (CFEPA) (§ 46a-51 et seq.). The defendant claimed that the court improperly concluded that the arbitration award violated the public policy embodied in § 31-51m. *Held*:

This court dismissed the appeal as moot, as the defendant failed to challenge an independent ground supporting the trial court's judgment granting the plaintiff's application to vacate the arbitration award, namely, that the arbitration award violated the public policy underlying CFEPA.

Argued March 24—officially released May 5, 2026

*Procedural History*

Application to vacate an arbitration award, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford and tried to the court, *Hon. Barry K. Stevens*, judge trial referee; judgment granting the application, from which the defendant appealed to this court. *Appeal dismissed*.

*Joseph F. Androski*, assistant corporation counsel, with whom, on the brief, was *John P. Marini*, for the appellant (defendant).

*Rachel M. Baird*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendant, the city of Ansonia, appeals from the judgment of the trial court granting the application of the plaintiff, Ansonia Police Union FOP Local 913, to vacate an arbitration award issued in the defendant's favor. On appeal, the defendant claims that the court improperly concluded that the arbitration award violated the public policy embodied in Connecticut's

whistleblower statute, General Statutes § 31-51m.[1] We do not reach the merits of this claim because we conclude that this appeal is moot on the basis of the defendant's failure to challenge an independent ground supporting the court's judgment, namely, that the arbitration award violated the public policy underlying the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq. Accordingly, we dismiss this appeal.

The following facts, as set forth by the trial court, and procedural history are relevant to our resolution of this appeal. "The [plaintiff] instituted this action on behalf of its member Detective Jonathan Troesser (Troesser), who is an employee of the Ansonia Police Department

---

[1] General Statutes § 31-51m provides in relevant part: "(b) No employer shall discharge, discipline or otherwise penalize any employee because (1) the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, (2) the employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action, or (3) the employee reports a suspected incident of child abuse or neglect pursuant to sections 17a-101a to 17a-101d, inclusive, or 17a-103. No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false.

"(c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court. Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal.

"(d) This section shall not be construed to diminish or impair the rights of a person under any collective bargaining agreement."

[(department)]. In 2022,[2] Troesser made a complaint regarding the [department] alleging that a fellow police officer ha[d] experienced harassment based on her race or gender.[3] The complaint was initially made anonymously, but the [department] did an investigation and determined that Troesser was the complainant. . . .

"After receiving . . . Troesser's complaint, an internal affairs investigation was initiated. During this investigation, Lieutenant Patrick Lynch concluded that the complaint was based on 'a combination of [Troesser's] conversations . . . information from third parties . . . rumor, gossip, innuendo, and his personal experiences in the department.' . . .

"On August 5, 2022, Troesser received a written warning for submitting the anonymous complaint. The

[2] In their respective appellate briefs, the parties indicate that the complaint was made near the end of 2021. This discrepancy does not affect our resolution of this appeal.

[3] The complaint, which was submitted to Ansonia Police Commissioner John Tar, stated as follows: "I want to anonymously make a complaint to you so that it can be investigated without having the [department] involved so it cannot be covered up. Officer Ovelize was treated very poorly during her training by Officer Castillo. He was rude and disrespectful to her. At one point, she stated that she spoke five languages to which he made a comment asking her if she spoke 'ebonics.' I think she was deeply offended by that. She also said that when she would ask him questions he would make her feel dumb and respond with 'duh.' When she went to [S]ergeant Flynn about it, he basically told her to ignore it instead of taking a report of her complaint. When she resigned, she told Chief Williams that she was treated poorly in the department but he did not ask for details or by whom. She stated that she knew she was just a number and was not treated like a person in the [department]. Officer Ovelize also stated that other new [o]fficers from Bridgeport were treated in the same way by Officer Castillo. He even told [Officer] Ovelize that the reason he was training her was that he was 'the best.' I think you should investigate and talk to Officer Ovelize and the other new hires from Bridgeport. There is a group within the department that are untouchable including the [a]cting [c]hief, [S]ergeant Flynn, [O]fficer Castillo and others. Another example of this was when Dispatcher Power was insulted by Officer Mendenhall and she heard it from inside dispatch. She made a comment to Sergeant Flynn who was standing right next to him and he pretended as though he did not hear anything. Officers and dispatchers are scared to report issues like these because of retaliation taken by this group which is protected by the [a]cting [c]hief."

written warning claimed that Troesser had engaged in 'criticism and malicious gossip,' prohibited conduct under § 2.3.18 of the [department's] 1987 Duty Manual [(manual)].[4] . . .

"This warning was not based on the complaint in its entirety. The [department] identified three sentences in the complaint as constituting prohibited conduct under § 2.3.18 [of the manual]: (1) 'I want to anonymously make a complaint to you so that it can be investigated without having the [department] involved so it cannot be covered up'; (2) '[t]here is a group within the department that are untouchable including the [a]cting [c]hief, [S]ergeant Flynn, [O]fficer Castillo and others'; and (3) '[o]fficers and dispatchers are scared to report issues like these because of retaliation taken by this group which is protected by the [a]cting [c]hief.' . . .

"Pursuant to the written collective bargaining agreement entered into between the parties [in effect from July 1, 2017 through June 30, 2022], an arbitration hearing was held on the warning before the Connecticut State Board of Mediation and Arbitration Labor Department (SBMA) . . . . The SBMA concluded [in an arbitration award dated August 15, 2023] that the [defendant] had just cause to discipline Troesser, reasoning that, while public policy protects employees from retaliation for filing good faith complaints alleging employment discrimination, the present case did not meet these circumstances. . . . Instead, the SBMA stated that '[Troesser's] reckless allegations of "retaliation" and a "cover-up," while later admitting that he had no facts to support such claims, need not be tolerated.' " (Citations omitted; footnotes added; footnote omitted.)

---

[4] Section 2.3.18 of the manual prohibits the following: "Criticism and Malicious Gossip—criticizing any other member or employee of the [d]epartment, except in the line of duty as a superior to a subordinate, or maliciously gossiping about any superior, order, policy, procedure, case or event that should remain police information; causing to discredit, lower or injure the morale of personnel in the [d]epartment, or that of any individual of the [d]epartment, or speaking slightingly of any race, nationality, or religion." (Emphasis omitted.)

On September 14, 2023, pursuant to General Statutes §52-418[5] and Practice Book §23-1,[6] the plaintiff filed with the Superior Court an application to vacate the arbitration award. The plaintiff asserted that the arbitration award violated "[1] [t]he clearly defined public policies prohibiting harassment and retaliation against [Troesser] for opposing and reporting gender and race discrimination as set forth in [CFEPA]; [and] [2] [t]he protections afforded under . . . §31-51m for [Troesser's] report of a violation or a suspected violation of a state or federal law or regulation or any municipal ordinance or regulation to Ansonia Police Commissioner John Tar, a member of a public body . . . ."[7] Both parties submitted briefs addressing the plaintiff's application. On September 26, 2024, the trial court, *Hon. Barry K. Stevens*,

[5] General Statutes §52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[6] Practice Book §23-1 provides: "In proceedings brought for confirming, vacating or correcting an arbitration award under chapters 862 and 909 of the General Statutes, the court or judge to whom the application is made shall cause to be issued a citation directing the adverse party or parties in the arbitration proceeding to appear on a day certain and show cause, if any there be, why the application should not be granted."

[7] In its application to vacate the arbitration award, the plaintiff also claimed that the award violated Troesser's due process rights pursuant to the federal and state constitutions. Additionally, in its principal brief filed in support of its application, the plaintiff alluded to a violation of Troesser's freedom of speech rights under the federal and state constitutions. In its memorandum of decision granting the plaintiff's application, the trial court, *Hon. Barry K. Stevens*, judge trial referee, declined to consider these constitutional claims because neither party had addressed them substantively.

judge trial referee, heard argument on the plaintiff's application.

On January 23, 2025, the court issued a memorandum of decision granting the plaintiff's application to vacate the arbitration award. The court determined that the plaintiff "ha[d] presented a legitimate, colorable claim of violation of public policy along with the identification of explicit, well-defined and dominant public policies based on CFEPA and § 31-51m," whereupon it "further conclude[d] that it [was] to engage in a de novo review of the parties' positions." With respect to CFEPA, the court stated that "Troesser engaged in legally protected activity when he submitted the anonymous complaint that was based on credible allegations of discriminatory behavior, and after his employer became aware that he was the author of the complaint, he suffered an adverse employment action in the form of a written warning. The court, therefore, concludes that the [plaintiff] has alleged sufficient facts to establish a prima facie case of retaliation under [General Statutes] § 46a-60 (b)[8] of CFEPA, and as a matter of law, the [arbitration] award confirming the disciplinary action against Troesser for making the complaint violates the clear public policy of CFEPA protecting such complaints." (Footnote added.) As to § 31-51m, the court stated that, "[w]hen viewed as a whole, it is clear that the complaint was submitted in order to report discriminatory behavior within the department, and that Troesser was engaging in protected behavior by doing so. Troesser submitted his anonymous

---

[8] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

Section 46a-60 was amended after Troesser received the written warning on August 5, 2022. See Public Acts 2022, No. 22-82, § 10; Public Acts 2025, No. 25-139, § 6. Those amendments, however, have no bearing on our analysis in this opinion. In the interest of simplicity, we refer to the current revision of the statute.

complaint containing suspected violations of state and federal law to a member of the public body and was penalized as a result. Therefore . . . the [arbitration] award violates the public policy established under § 31-51m and, therefore, should be vacated on [that] ground." This appeal followed. Additional procedural history will be set forth as necessary.

In its appellate brief filed on June 5, 2025, the defendant briefed a single claim separated into two subsections. In the first subsection, the defendant asserted that the court misapplied the governing legal standard by substituting its own factual findings for the SBMA's factual findings, which, as the defendant posited, were binding on the court. In the second subsection, the defendant contended that the arbitration award did not violate the public policy embodied in § 31-51m, which conclusion, the defendant maintained, was inescapable but for the court's improper fact-finding. On March 20, 2026, this court ordered, sua sponte, the parties to be prepared to address at oral argument "whether the defendant's claim that the trial court erred in finding that the arbitration award violates public policy is moot because the defendant fails to challenge the trial court's finding that the award 'violates the clear public policy of' [CFEPA], which is a binding adverse finding that the award violates public policy."

During oral argument before this court on March 24, 2026, in addressing the mootness issue, the defendant's appellate counsel[9] did not argue that the defendant's appellate brief distinctly examined the trial court's conclusion that the arbitration award violated the public policy embodied in CFEPA; instead, counsel argued that the trial court's analyses regarding § 31-51m and CFEPA were similar, such that "a separate CFEPA section in [the defendant's] brief would have been the same argument repeated." As to the mootness issue, the plaintiff's

[9] At oral argument, Attorney Joseph F. Androski appeared on behalf of the defendant. We note that the defendant's appellate brief was filed by Attorney John P. Marini, then of the Marino Law Firm, LLC, and later of Ryan Ryan Deluca, LLP.

counsel argued that the defendant had failed to challenge on appeal the court's determination that the arbitration award violated the public policy underlying CFEPA. We conclude that this appeal is moot.

"Mootness is a question of justiciability that must be addressed as a threshold matter because it implicates this court's subject matter jurisdiction . . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . Where an appellant fails to challenge all bases for a trial court's adverse ruling on [the appellant's] claim, even if this court were to agree with the appellant on the issues that [the appellant] does raise, we still would not be able to provide [the appellant] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Internal quotation marks omitted.) *State* v. *Wright*, 235 Conn. App. 143, 182–83, 345 A.3d 504 (2025).

In granting the plaintiff's application to vacate the arbitration award, the court concluded that the award violated the public policy underlying two statutes, CFEPA and § 31-51m, with the court addressing the public policy violation as to each statute in separate sections of its decision. In other words, the court vacated the arbitration award on two independent grounds, one predicated on CFEPA and the other on § 31-51m. On the basis of its appellate brief, we interpret the defendant's claim on appeal to be that the court improperly substituted its factual findings for those of the SBMA and relied on said fact-finding to conclude that the arbitration award violated the public policy of § 31-51m. The defendant makes only passing references to CFEPA on a couple of pages of its appellate brief, and, therefore,

it has abandoned any claim of error vis-à-vis the court's CFEPA analysis.[10] See *Robb* v. *Connecticut Board of Veterinary Medicine*, 204 Conn. App. 595, 611, 254 A.3d 915 ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.)), cert. denied, 338 Conn. 911, 259 A.3d 654 (2021).

In short, the defendant has failed to challenge all of the independent grounds underlying the court's judgment granting the plaintiff's application to vacate the arbitration award. Accordingly, we conclude that this appeal is moot, and, therefore, we lack subject matter jurisdiction to entertain it.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[10] We are not persuaded by the argument raised by the defendant's appellate counsel during oral argument that the defendant's failure to brief a claim challenging the court's conclusion regarding CFEPA can be excused because (1) the court employed similar analyses in its decision as to both CFEPA and § 31-51m and (2) the defendant briefed a claim directed to the court's § 31-51m analysis. We decline the invitation to import a claim into the defendant's brief that it did not assert.